46 F.3d 1143
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Norma MELSHEIMER, Plaintiff-Appellant,
v.
Carl C. KAO, M.D. and COLUMBIA COUNTY HOSPITAL DISTRICT NO.
1, d/b/a DAYTON GENERAL HOSPITAL, Defendants-Appellees.
 No. 93-35899.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted: Oct. 5, 1994.
Decided: Jan. 25, 1995.
 
 Before: WOOD, Jr.,* HUG, and TANG, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Plaintiff Norma Melsheimer brought an action alleging professional negligence against Dr. Carl C. Kao and Dayton General Hospital. In a five day non-jury trial, the district court held that Dr. Kao was negligent in performing a 1988 back operation on Ms. Melsheimer, and Dayton General Hospital was negligent for extending and continuing to extend privileges to Dr. Kao. Because the State of Washington follows the doctrine of comparative negligence, the court apportioned the comparative fault of Dr. Kao at 80% and 20% to Dayton General. In awarding damages, the court determined that the defendants' conduct had worsened Ms. Melsheimer's condition. Because, however, she had previously undergone at least twelve back surgeries the district court apportioned Dr. Kao's and Dayton General's negligence at one-twelfth of the total damages awarded. Ms. Melsheimer appeals the district court's award of damages.
 
 
 3
 Ms. Melsheimer has a history of problems with her back that began in 1974 when she was injured in an automobile accident. By 1988 she had undergone no fewer than twelve operations on her lower back. Ms. Melsheimer also suffers from arachnoiditis.[1] Plaintiff's last operation prior to seeing Dr. Kao was an orthopedic stabilization procedure in 1987. The physicians who performed the stabilization procedure recommended a follow-up vertebral fusion. The plaintiff did not have the surgery performed at that time, but decided to go home to England to recuperate.
 
 
 4
 While recovering from this surgery, Ms. Melsheimer learned of Dr. Carl C. Kao from another patient. In 1988 Ms. Melsheimer visited Dr. Kao in a London hotel room for an examination with hopes of having Dr. Kao complete the vertebral fusion. In September 1988 Dr. Kao performed the surgical procedure at Dayton General Hospital, a 28-bed facility in a small, rural town in the State of Washington. His plan was to "open her spinal column, remove scar tissue, and insert stents from one end of her spinal column to the other through any blockage caused by arachnoiditis, in order to allow the flow of spinal fluid through her spinal column."
 
 
 5
 Unfortunately Ms. Melsheimer was not aware that Dr. Kao also has a history, but his history consists of allegations of questionable ethics, a disregard for scientific or medical principles, and a series of terminations and severances from several schools and hospitals. Dr. Kao performed his operation on Ms. Melsheimer at Dayton General Hospital, the only hospital in the United States where he still had privileges.
 
 
 6
 After the operation, Ms. Melsheimer's condition deteriorated significantly. The district court found that "Ms. Melsheimer suffers from more pain, more problems with incontinence, and more difficulty in mobility now than before Dr. Kao's operation." Both parties presented several experts who testified as to Ms. Melsheimer's abilities prior to and after the surgery. Before having the surgery performed, Ms. Melsheimer was seen by Dr. Wood who noted no neurological abnormalities of the lower limbs nor abnormalities in the rectum. Dr. A. Basil Harris, a treating and expert witness on behalf of the plaintiff, testified that Dr. Wood's findings were significant because it indicated there was no nerve damage at this time that would cause any incontinence. Radiographic studies were also introduced into evidence that established the arachnoiditis scar tissue caused by Dr. Kao's surgery substantially narrowed the lumbar spine where nerves to the bowel and bladder pass.[2] These studies were the only objective pictures taken of Ms. Melsheimer's spinal cord before and after the surgery.[3] Further, Dr. Harris testified that after the operation, Ms. Melsheimer showed strength in her walking muscles to be decreased by a measured scale of 3/5.[4] Ms. Melsheimer contends she could walk without assistance and was independent in her toileting activities before the 1988 operation.
 
 
 7
 The defendants' experts attacked Ms. Melsheimer's ability to provide an accurate perception of her condition because of her past diagnosis of having a "conversion disorder."[5] One of the defendants' witnesses, Dr. Vern Cressey, testified that Ms. Melsheimer suffers from a "conversion disorder" and a "theatrical personality." Dr. Cressey testified that Ms. Melsheimer exaggerates her symptoms and dependency on others. Dr. Cressey concurred with other physicians' diagnoses that Ms. Melsheimer has a "bizarre gait," but thought from a psychiatric standpoint, the gait did not arise from solely anatomical abnormalities but also from her conversion disorder.
 
 
 8
 The district court concluded that Dr. Kao violated the standard of care and determined that Ms. Melsheimer was entitled to past economic damages, future economic damages, and compensation for pain and suffering. Plaintiff presented an expert witness, Heather Oesting, R.N., who testified that the cost of Ms. Melsheimer's yearly medical care would range from $35,322 to $50,636. The district court adopted a compromised figure from that range, $42,979, as the economic damages per year. The court then multiplied that figure by Ms. Melsheimer's life expectancy of 25.31 years and concluded that the total future damages would be $1,087,798.00. As for past economic damages, the court agreed to award $42,979, the yearly expense award, for the year prior to trial. The court also awarded $188,484 for noneconomic damages of pain and suffering.
 
 
 9
 As the court understandably noted, the difficulty was in ascertaining the extent of Ms. Melsheimer's condition that was attributable to Dr. Kao's negligence. The court found that because Ms. Melsheimer underwent at least twelve operations, Dr. Kao's negligence could account for only one-twelfth of her present damages. The court also did not accept the plaintiff's view of the dramatic increase in her injuries. Therefore, the court reduced Ms. Melsheimer's award by 91.67%. Ms. Melsheimer received one-twelfth of the total future damages, $90,660.00, past economic damages, $3,582, and $188,484 for pain and suffering for a total of $282,726.00.[6]
 
 
 10
 The district court had subject matter jurisdiction pursuant to diversity of citizenship, 28 U.S.C. Sec. 1332. Ms. Melsheimer is a resident alien living in North Hollywood, California. The district court's computation of damages is a finding of fact we review under the clearly erroneous standard. Fed. R. Civ. P. 52(a); see also Stephens v. City of Vista, 994 F.2d 650, 655 (9th Cir. 1993). "'A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."' Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). If the district court's conclusion is "plausible in light of the record viewed in its entirety" then the finding is not clearly erroneous. Id. at 573-74. A very useful restatement of this standard is that "this court will not disturb an award of damages unless it is 'clearly unsupported by the evidence,' or it 'shocks the conscience."' Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 710 (9th Cir. 1990) (citations omitted).
 
 
 11
 Ms. Melsheimer contends the district court's reduction of future economic damages to only one-twelfth of the original amount of $1,087,798.00 is clear error. She argues that the 91.67% reduction is based on an unfounded presumption that the previous surgeries were all proportionately equal in causing her damages.
 
 
 12
 The determination of the proper amount of damages which reasonably compensates a person for her personal injuries is not subject to a precise formula. Estes v. Bevan, 64 Wash.2d 869, 871, 395 P.2d 44, 45 (1964). We recognize that when the injury is to a person, causing pain and suffering, any guideline is necessarily indefinite. See Malstrom v. Kalland, 62 Wash.2d 732, 736, 384 P.2d 613, 616 (1963). Despite the lack of specific guidelines in assessing damages, however, the trier of fact must weigh all the evidence before it and consider the pertinent factors. If, in our review, the award of damages does not clearly reflect the weight of the evidence, then the award must be set aside.
 
 
 13
 As understandably difficult as the situation may be, the appropriate way to evaluate damages is to consider the plaintiff's condition and disabilities before Dr. Kao's surgery and to compare her condition and disabilities after. Ms. Melsheimer's prior surgeries and back problems can be considered pre-existing conditions. When a plaintiff brings a negligence cause of action and has suffered from prior injuries, these previous conditions will be taken into consideration when the trier of fact assesses damages. Recovery will not be allowed for any results which would have normally followed from the pre-existing condition had there been no subsequent negligence. Ms. Melsheimer's damages in our view should have been evaluated in this manner.
 
 
 14
 Ms. Melsheimer introduced the testimony of several medical experts that observed Ms. Melsheimer's conditions before and after the surgery, concluding that after Dr. Kao's surgery her back problems worsened. Radiographic studies were introduced into evidence which illustrated the deterioration of Ms. Melsheimer's spinal cord pre- and post-Dr. Kao's surgery. Further, Ms. Melsheimer testified that she has lost much of her mobility and independence in caring for herself. The testimony of the defendants' experts who attempted to discredit Ms. Melsheimer's testimony must be weighed in the light of all the evidence before the court.
 
 
 15
 The district court's assignment of a proportionate share of damages to Ms. Melsheimer's prior surgeries has some practical appeal in these circumstances, but we cannot find it to be supported by an analysis of the evidence and therefore it must be considered arbitrary. The court found Ms. Melsheimer now "suffers from more pain, more problems with incontinence, and more difficulty in mobility" than she did prior to Dr. Kao's surgery. The district court should consider Ms. Melsheimer's condition as a whole before and after the 1988 surgery and assess damages accordingly. We reverse and remand the damages issue back to the district court to determine damages in accordance with this memorandum.
 
 
 16
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The spinal cord is covered by a thin membrane called the pia. The pia is covered by the arachnoid, another thin membrane. Arachnoiditis is an inflammation of the arachnoid membrane
 
 
 [2]
 The radiographic studies show that before the surgery Ms. Melsheimer's thecal sac at the L2-3 lumbar spine level was of normal size and contour, measuring a width of 1.7 cm. Post-operatively the first myelogram was abnormal, showing her thecal sac reduced to only 1 cm
 
 
 [3]
 The radiographic studies are the only imagery of Ms. Melsheimer's spinal cord because Dr. Kao failed to perform an MRI or a CT myelogram of the operative area before surgery. His failure to do so was found to be negligent
 
 
 [4]
 The measurements are on a scale of 1/5 to 5/5. A 2/5 means the person is not going to be able to walk at all. A 5/5 is maximum strength
 
 
 [5]
 From testimony at trial, a conversion disorder is indicated by a major alteration in a body function as a result of emotional stress
 
 
 [6]
 Specifically the district court computed damages as follows:
 Past Economic Damages (42,797 x 1/12) $ 3,582
 Future Economic Damages (1,087,798 x 1/12) $ 90,660
 Pain and Suffering $ 188,484
 ----------
 TOTAL DAMAGES $ 282,726